## Longo Liquor License Case.

Argued March 20, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Cletus C. Kilker,* with him *Alvin E. Maurer,* for appellants.

*Robert H. Jordan,* Special Assistant Attorney General, with him *Horace A. Segelbaum,* Assistant Attor-

ney General, and *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY WRIGHT, J., June 11, 1957:

Louis A. Longo and his wife made application to the Pennsylvania Liquor Control Board for a new hotel liquor license covering premises situate on Route 122 in East Norwegian Township, Schuylkill County. The Board refused the application on the ground that the "building proposed to be licensed does not comply with the requirements prescribed by law". The Longos then appealed to the Court of Quarter Sessions of Schuylkill County, which tribunal sustained the action of the Board. This appeal to the Superior Court followed.

Appellants own a tract of three acres fronting 238 feet along the public highway. Since March 1951 they have operated thereon a restaurant containing a large dining room, a luncheonette, and a separate kitchen. It is impossible for them to secure a new restaurant liquor license because the township quota is exceeded. In March 1956 they completed, and commenced operating, a motel situated 150 feet to the rear of the restaurant. This motel contains twelve bedrooms and a central office. It is appellants' contention in applying for a hotel liquor license that the restaurant and bedrooms, although physically separated, should be considered as one "place" within the definition of the word "hotel" as contained in the Liquor Code.[1] With this contention we do not agree.

In their brief, appellants assert that the "only question is whether the fact that the sleeping accommodations are contained in a building separate from the dining facilities, disqualifies the premises and the appli-

---

[1] Act of April 12, 1951, P. L. 90, Section 101, 47 P.S. 1-101 et seq.

cants in seeking a hotel liquor license". They cite Section 102 of the Liquor Code (47 P.S. 1-102) which defines "hotel" as follows: " 'Hotel' shall mean any reputable place operated by responsible persons of good reputation where the public may, for a consideration, obtain sleeping accommodations and meals and which, in a city, has at least ten, and in any other place at least six, permanent bedrooms for the use of guests, a public dining room or rooms operated by the same management accommodating at least thirty persons at one time, and a kitchen, apart from the public dining room or rooms, in which food is regularly prepared for the public". Appellants argue that "nowhere does the definition indicate that the word 'place' is to be construed or interpreted to mean *one building*"; further that, since the definition in the same section of the word "restaurant" provides "the place to have an area within a building of not less than four hundred square feet", the legislature imposed a one-building requirement in the case of a restaurant, but did not impose such a requirement in the case of a hotel.

In answer to appellants' contention, the Liquor Control Board argues that the word "place", as used in the statutory definition of "restaurant", means the restaurant itself; and that "the requirement in the said definition that the restaurant or place shall be in a *'building'* is necessary for the purpose of identification, because a restaurant does not occupy an entire building but only one or more rooms therein which are specified in the application for the license"; that the word "place", as used in the definition of "hotel", means the hotel itself, "and the fact that the word 'building' is not used in said definition indicates that the application for a hotel license is not only for one or more specific rooms in a building, but for the building itself and the hotel license covers not only the

dining room or rooms, but also the bedrooms in the hotel building". The Board also points out that Section 406 of the Liquor Code (47 P.S. 4-406) permits the serving of liquor to guests in their private rooms "in the hotel".

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Statutory Construction Act of May 28, 1937, P. L. 1019, Section 51, 46 P.S. 551. Our present Liquor Code is based upon the Act of November 29, 1933, P. L. 15, which was adopted at the time of the repeal of the Eighteenth Amendment. An examination of that Act reveals that the word "hotel" is defined in substantially the same language as that used in the present statute. In 1933 the word "motel" was not in common usage, whereas the word "hotel" possessed a well established meaning. Just six years earlier Mr. Justice (later Chief Justice) KEPHART had said: "A hotel is *a building* held out to the public as a place where all transient persons who come will be received and entertained as guests for compensation" (italics supplied): *Satterthwait v. Gibbs,* 288 Pa. 428, 135 A. 862 (1927).

The position of the Liquor Control Board has consistently been that, in order for a licensee's premises to qualify as a hotel, the sleeping accommodations and the dining facilities must be part of one and the same building. We note in this connection that the construction of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous: *Federal Deposit Insurance Corp. v. Board of Finance and Revenue,* 368 Pa. 463, 84 A. 2d 495. See also *Cammie v. I. T. E. Circuit Breaker Co.,* 151 Pa. Superior Ct. 246, 30 A. 2d 225.

By the Act of June 24, 1939, P. L. 806, the legislature established a quota basis for the issuance of licenses. Again the word "hotel" was defined in substantially the same language as in the original enactment, although somewhat enlarged with respect to the number of rooms necessary to qualify under different populations. The provisions of the quota law were carried over without substantial change into the present Liquor Code (47 P.S. 4-461). At no time in the frequent amendments to, and eventual recodification of, the legislation on the subject has there been any indication of an intention to expand or broaden the definition of the word "hotel" as interpreted by the Board.

We attach no significance to the assertion by appellants that their "establishment is already considered a hotel by the Department of Revenue of the Commonwealth of Pennsylvania since they are assessed a hotel use and occupancy tax". The Hotel Occupancy Tax Act[2] has as its purpose the imposition of an excise tax upon room occupancy, payable by the occupant, and expressly includes "inns, motels, tourists homes, houses, or courts, lodging houses and rooming houses".

Sophistry and semantics to the contrary notwithstanding, the words "motel" and "hotel" have different connotations. A motel may be operated with or without restaurant facilities. Certainly a motel without a restaurant is not a hotel. We are unwilling to say that an established restaurant may qualify as a hotel, and thus acquire the valuable right of exemption from the quota provision, merely by erecting a separate motel 150 feet to the rear. To so hold would be an invasion on our part of the province of the legislature.

The order of the lower court is affirmed.

---

[2] Act of March 6, 1956, P. L. (1955) 1256, 72 P.S. 3404-101 et seq.

DISSENTING OPINION BY ERVIN, J.:

I dissent and would reverse the order of the lower court and direct the granting of the new hotel liquor license applied for in these proceedings. The only question is whether the fact that the sleeping accommodations are contained in a building or buildings separate from the dining facilities disqualifies the premises and the applicants from seeking a hotel liquor license. In my judgment, the fact that the restaurant is in a building separate from the sleeping quarters should not be fatal to the application. While statistics are not available, it is my belief that the great majority of travelers today stay in motels rather than hotels. This is undoubtedly because of the great increase in motor vehicle transportation. Huge sums of money have been invested, not only in Pennsylvania but throughout the length and breadth of our land, in the construction of motels. Most of them are well run and are clean and modern in every respect. To discriminate between motels and hotels in this modern day is a step backward. To deny services and accommodations to the traveling public who stay in motels merely because of the fact that the restaurant is not physically a part of the sleeping quarters is unreasonable. A motel on one side of the road, under the majority opinion, would qualify for a license as long as the restaurant was a part of the sleeping quarters. But a motel immediately across the road could not qualify for a license if the restaurant were separate from the sleeping quarters. As long as both are in a common ownership, there is no logical reason for making a distinction.

Webster's New International Dictionary, Second Edition, Unabridged, 1956, in Addenda, contains the following definition for "motel": "(From motorists' hotel) a. A hotel for automobile tourists. b. A group of furnished cabins or attached cottages, situated near

a highway, offering accommodation to tourists." Words and Phrases, 1956 Cumulative Annual Pocket Part to Vol. 27, contains the following re "motel": "The word 'motel' generally denotes a small hotel where lodgings are available for hire, with a minimum of personal service being furnished by the proprietor. Schermer v. Fremar Corp., 114 A. 2d 757, 760, 36 N. J. Super. 46.

"A 'motel' is a modern development of an inn or hotel, serving transients, and cannot be regarded as an 'apartment house' within meaning of restrictive covenant. Parrish v. Newbury, Ky., 279 S.W. 2d 229, 233." See also *Maturi v. Balint,* 130 N.Y.S. 2d 122, 123, 283 App. Div. 624, where a motel was held to be a hotel.

GUNTHER and WATKINS, JJ., join in this dissent.